UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

Freddie James Prewitt,

          Petitioner,                  No. 13-cv-2866 (JRT/LIB)

v.                                 **REPORT AND RECOMMENDATION**

Bruce Reiser, *Warden, D.O.C.,*
*Minnesota*

          Respondent.

_____

      This matter is before the undersigned United States Magistrate Judge on Prewitt's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1].  Prewitt appears *pro se*, and Respondent is represented by Michael O. Freeman, Assistant Hennepin County Attorney.  The case has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that the petition be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

      On April 9, 2012, a Minnesota state court jury found Prewitt guilty of third degree criminal sexual conduct.  (Pet.)  *State v. Prewitt*, No. A12-1456, 2013 WL 3491078, at *1-4.  (Minn. Ct. App. July 15, 2013) *rev. denied* (Sept. 25, 2013).   Prewitt was sentenced to 153 months imprisonment, and is serving his sentence at the Minnesota Correctional Facility in Faribault, Minnesota.  (Pet.)   Prewitt appealed his conviction

to the Minnesota Court of Appeals, and the court affirmed the conviction.   The Minnesota Supreme Court denied review on September 25, 2013.

Prewitt filed his habeas corpus petition on October 18, 2013.   He alleged the following grounds for relief for violations of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution:   Ground One: trial court erred by not obtaining waiver of right to counsel by pro se defendant; Ground Two: prosecutorial misconduct in closing argument; Ground Three: deprivation of right to an impartial judge; Ground Four(a): failure to appoint advisory counsel; Ground Four(b): failure to provide discovery; Ground Four(c): error in admission of hearsay evidence; Ground Four(d): insufficiency of the evidence; Ground Four(e): deletions from the official trial transcript; Ground Four(f): improper jury charge; and Ground Four(g): failure to provide jury of his peers.   Prewitt raised the first three grounds of the habeas petition in his direct appeal to the Minnesota Court of Appeals and to the Minnesota Supreme Court, and the claims are exhausted.   Respondent contends that although Petitioner raised the same factual issues as in Ground Four of the habeas petition to the state courts, he did not fairly present the federal nature of those claims, and they are procedurally defaulted.

## II.    DISCUSSION

### A.    Request for Discovery

In his Reply, Prewitt seeks discovery of information that he alleges was hidden by the prosecutor, including hospital records and "supplemental discovery." (Petitioner's Reply to Respondent's Answer to Pet. for Writ of Habeas Corpus ("Pet'r Reply") at 1).   A habeas petitioner is not entitled to discovery as a matter of course.

*Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  A habeas petitioner, however, can invoke the discovery process "'if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.'"  *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004) (quoting Rules Governing Section 2254 Cases in the United States District Courts, Rule 6(a)).  Under this standard, the habeas court must first identify the essential elements of the substantive claim and evaluate whether "specific allegations show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy*, 520 U.S. at 904.

As far as this Court can tell, the discovery of hospital records is related to the following allegation:

> [T]he SARS Nurse testified that the PRESENT, PHYSICAL, FINDING of evidence was not Confirmed.  And there were no external or internal injuries assessed on any parts of the alleged victim body.  When sexual assault is an intent Crime and requires proof of an injury.

(Pet'r Reply at 0-1, 11).

The Minnesota Court of Appeals made the following factual findings, which are presumed correct on habeas review, absent clear and convincing evidence to the contrary.  *See, Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1).

> In May 2011, Freddie James Prewitt accompanied A.E., her friend, and another man to an apartment where all four ingested heroin.  A.E. eventually went into a bedroom and fell asleep.  The next morning, A.E. felt pain in her genital area and her friend told her that Prewitt had gone into the bedroom after her and had refused to let anyone else inside. A.E. went to the hospital for a sexual-assault examination. The examining nurse swabbed A.E.'s vagina and rectum.

3

> DNA testing of the swabs revealed semen that matched Prewitt's DNA profile maintained on a BCA database.  A police investigator interviewed Prewitt, who denied ever having any sexual contact with A.E.  The investigator obtained a DNA sample from Prewitt, which matched the DNA obtained from A.E.'s sexual-assault examination.

*Prewitt*, 2013 WL 3491078, at *1.

Assuming that the hospital records are related to Prewitt's claim of insufficiency of the evidence, there is little chance the hospital records would be able to demonstrate that he is entitled to relief.  Evidence that the victim did not have injuries is largely immaterial, given that the victim was asleep and not resisting during the rape, and Prewitt's DNA sample matched the DNA in the semen in the victim's body.

Prewitt also appears to seek supplemental discovery that he allegedly never received, including "[t]he transcripts of the police officer, Officer White, who prepared the Police reports, concerning the inadmissible hearsay alleged in the criminal Complaint . . ." (*Id.* at 11.)  This relates to Prewitt's claim that his case:

> is base [sic] on hearsay from an Alleged witness who did not give a statement under oath, an out of Court statement shared with the alleged victim that her friend (MAKOSA) had seen the petitioner go in the room where the alleged victim was sleeping.

(*Id.* at 12).  The Court will address the merits of Prewitt's claim that admission of this testimony violated his Sixth Amendment right to confrontation.  However, because it was the victim, not Officer White, who testified about Makosa's statement, evidence that Officer White did not get Makosa's statement under oath would not support Prewitt's habeas claim.  Therefore, upon review of the record as a whole, the Court does not find good cause to order discovery in this matter, as it is not likely to demonstrate Prewitt's entitlement to relief on any claim.

4

## B.     Expanded Record

Prewitt moved to supplement his petition with a transcript relating to his Confrontation Clause claim and to expand his right to trial counsel claim with additional argument.  (Docket Nos. 27, 28.)  This Court granted those Motions, (Order [Docket No. 29]),[1] has considered the supplemental material.

## C.     Procedural Default

A federal habeas petitioner must exhaust state remedies for each claim that he brings in an application for a writ of habeas corpus on behalf of a prisoner in custody pursuant to the judgment of a state court.  28 U.S.C. § 2254(b)(1)(A).  The doctrine of exhaustion requires a petitioner to "fairly present" his federal claims to each appropriate state court (including a state supreme court with powers of discretionary review), and if the petition or brief to the state courts did not present a federal claim by fairly alerting the court to the federal nature of the claim, the claim is unexhausted.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  "[T]o fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue . . ."  *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010) (quoting *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks omitted) quoting *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997)).  "'Mere similarity between . . . state law claims and . . . federal habeas claims is insufficient' to satisfy the fair presentation requirement."  *Id.* (quoting *Carney*, 487 F.3d at 1097) (alteration in original) quoting *McCall*, 114 F.3d at 757).

---

[1] Docket No. 28 was granted in part, to the extent that Petitioner sought to supplement his arguments, and denied in part, to the extent that he sought review of his motions for appointment of counsel.  (See Order [Docket No. 29]).

When a prisoner fails to allow the state courts the opportunity to correct a federal constitutional violation, and state procedural rules preclude the prisoner from presenting the federal claims in state court, the federal claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991) (applying the independent and adequate state law ground doctrine in the habeas context). The state procedural rule relevant to this case is found in *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). "Under Minnesota law, where a defendant took a direct appeal, 'all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petitions for post-conviction relief." *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011) (quoting *Cooper v. State*, 745 N.W.2d 188, 190-91 (Minn. 2008), quoting *Knaffla*, 243 N.W.2d at 741). The *Knaffla* rule is firmly established and regularly followed, thus claims barred by *Knaffla* in state court are barred from federal review as procedurally defaulted. *Murray v. Hvass*, 269 F.3d 896, 899-900. (8th Cir. 2001).

Minnesota recognizes two exceptions to the *Knaffla* procedural bar: (1) a claim is so novel that the legal basis was not reasonably available on direct review; and (2) the interests of justice require review, and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. *Fraction v. Minnesota*, 678 F.Supp.2d 908, 917 (D. Minn. 2008) (citing *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006) (citations omitted)). Under federal law, there are also two instances where a habeas petitioner may overcome a state procedural bar: (1) by showing cause and prejudice; or (2) by showing the failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

The "cause" under the cause and prejudice test must be something external to the petitioner and cannot fairly be attributed to him. *Id.* (quoting *Coleman*, 501 U.S. at 753). "Prejudice" under this test is more than the possibility of prejudice, but that errors at trial infected the entire trial with error of constitutional dimensions. *Id.* The miscarriage of justice exception requires the petitioner to show "based on new evidence that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* (quoting *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quotations omitted) *cert. denied*, 516 U.S. 1161 (1996)).

**D.    Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern substantive review of Prewitt's habeas claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim- -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the application of the statute by federal district courts. The Supreme Court recognized that

> a state-court decision can be 'contrary to" this Court's clearly

> established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id.* at 405.

> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 413.

The Court also explained that

> a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was **objectively unreasonable**. . . . [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 411 (emphasis added). A writ of habeas corpus can also be granted if the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. ¶ 2254(d)(2).

A federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) "[w]e cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct"). "AEDPA . . . imposes a highly deferential

standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt . . . ." *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (internal quotations omitted).  The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011).

### E.    Ground One:  waiver of the right to counsel.

Prewitt contends his constitutional right to counsel was violated because he was not capable of representing himself, he never signed a written waiver of his right to representation, and he had good reason to fire his public defender.  (Pet'r Reply at 7-8; Appellant's Brief, Respondent's App. at 22-25, Docket No. 14 ("Resp't App."))  The Minnesota Court of Appeals held Prewitt's waiver of the right to counsel was valid, pursuant to the standards announced in *State v. Rhoads*, 813 N.W.2d 880, 884 (Minn. 2012), and *State v. Worthy*, 583 N.W.2d 270, 275 (Minn. 1998).[2]  *Prewitt*, 2013 WL at 3491078, at *4-5.  "Waiver of the right to counsel must be made knowingly, intelligently, and voluntarily." *Id.* at *4 (citing *Rhoads*, 813 N.W.2d at 884.)  "Whether a waiver of a constitutional right is valid depends upon the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the

---

[2] The Minnesota Supreme Court in *Rhoads* cited the federal constitutional standard announced in *Faretta v. California*, 422 U.S. 806, 835 (1975) ("a defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Rhoads*, 813 N.W. 2d at 885 (2012).  In *Worthy*, the Minnesota Supreme Court cited *Johnson v. Zerbst*, 304 U.S. 458, 466-65 (1938) ("This right to an attorney may be waived if the waiver is competent and intelligent.") 583 N.W. 2d at 275-76.

accused." *Id.* (quoting *Worthy*, 583 N.W.2d at 275-76).   The Minnesota Court of Appeals held:

> The district court specifically outlined the elements of the offenses that Prewitt was charged with, and it twice told him the presumptive sentence.   It discussed Prewitt's defense-strategy options, including the difficulties of challenging DNA evidence and the elements of a consent defense.   And it repeatedly warned Prewitt about the dangers of proceeding pro se, emphasizing that he would be held to the same standards as an attorney and highlighting difficulties of challenging certain evidence without expert legal and scientific assistance.   Prewitt steadfastly demanded his right to defend himself in the face of the express and implied risks and consequences of proceeding without representation. We hold that his waiver of his right to counsel was valid.

*Id.* Specifically, the Minnesota Court of Appeals noted Prewitt said he wanted to argue the DNA issue with the "[p]ower of a pro se litigant," attesting that he had the ability to conduct independent research about DNA evidence, and he asked the court, "So can I request to represent myself as a pro se litigant?"   *Id.* at *1.   After the trial court warned Prewitt of the particular difficulties of self-representation in his case, Prewitt asked, "So you're giving me the right to be a pro se litigant, right?"   *Id.*   The court agreed and appointed the public defender as advisory counsel.   *Id.*   There is nothing unreasonable about the determination of the Minnesota Court of Appeals that Prewitt's waiver of his right to trial counsel was valid, given the trial court's repeated warnings of the specific obstacles Prewitt would encounter in self-representation, and Prewitt's unwavering assertion of his right and ability for self-representation.

### F.     Ground Two:  prosecutorial misconduct

Prewitt alleges the prosecutor committed misconduct in closing argument by pointing out that the victim was forced to be questioned by her rapist in court, implying

that the jury should punish Prewitt for exercising his right to represent himself.   (Pet.,

Ground Two; Appellant's Brief, Resp't App. at 26-30.)   Respondent contends, in denying

Prewitt's prosecutorial misconduct claim, the Minnesota Court of Appeals applied an

even stricter standard than required under the United States Constitution.   (State's

Mem. at 16-20.)

Because Prewitt did not object to the closing argument at trial, the Minnesota

Court of Appeals applied the plain error standard, asking (1) whether the prosecutor

erred; (2) whether the error was plain; and (3) whether the error affected the

defendant's substantial rights.   *Prewitt*, 2013 WL 3491078, at *5 (citing *State v. Ramey*,

721 N.W.2d 294, 299, 302 (Minn. 2006)).   If those requisites were met, the court would

decide whether to exercise its discretion to reverse to "ensure fairness and the integrity

of the judicial proceedings."   *Id.* (citing *Ramey* at 302.)   The court held:

> The prosecutor here focused her closing argument on A.E.'s
> credibility, discussing it in relation to each of several factors
> drawn verbatim from the jury instructions.   Prewitt extracts
> sentence fragments to assert that "[t]he prosecutor also
> argued that 'rapist' Prewitt, by going to trial and cross-
> examining [A.E.], 'forced' her to 'submit' to questioning."   The
> argument is distortion.   It takes the prosecutor's words
> obviously out of context.   The prosecutor made the
> challenged comments specifically in the context of defending
> A.E.'s credibility against Prewitt's express assertion that she
> had fabricated her rape account.   She argued that the jury
> should deem A.E.'s account credible, pointing out that she
> had no "motive to fabricate" because she had "no upside to
> her [accusing Prewitt] other than to be forced to take the
> stand months after this happened . . . and submit to
> questioning by her rapist."   Contrary to Prewitt's contention,
> the prosecutor did not suggest that the jury punish Prewitt for
> exercising his trial rights.   We hold that the prosecutor's
> comments likely did not constitute error, and certainly not
> plain error.

*Id.* at 6.

The United States Supreme Court announced the standard for prosecutorial misconduct claims of constitutional magnitude in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 180 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  In *Darden*, "[m]uch of the objectionable content was invited by or was responsive . . . to the defense" which is a factor to "determine [the alleged improper statements] effect on the trial as a whole."  *Id.* at 182 (quoting *United States v. Young*, 470 U.S. 1, 13 (1985)).  The *Darden* standard is very general, therefore habeas courts have "more leeway . . . in reaching outcomes in case-by-case determinations. . . ."  *Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (alteration in original)).

Given the context of the prosecutor's entire closing argument,[3] including proper application of the facts to the elements of the crime and responsiveness to the defenses, the Minnesota Court of Appeals decision is a reasonable application of the *Darden* standard.

### G.    Ground Three:  right to an impartial tribunal

Prewitt contends he was deprived of his constitutional right to an impartial judge because the judge gave him advice to present a consent defense, the judge questioned a witness in front of the jury, and the judge threatened him with contempt in front of the jury.  (Pet., Ground Three; Appellant's Brief, Resp't App. at 31-42).  Respondent argues the record shows neither favoritism nor bias by the trial court toward Prewitt, given the

---

[3] The prosecutor's closing argument, in its entirety, is in Respondent's Appendix at 257-272.

difficult task of steering a pro se defendant through trial.   (State's Mem. at 21-25).

Concerning the trial court's questioning of a witness, Respondent contends that it was

not an error under federal law, and if there was any error at all, it was harmless.

(State's Mem. at 25).

The Minnesota Court of Appeals recognized that an impartial judge is a "basic

protection" of the criminal justice system, but also that a trial judge faced with a pro se

defendant will be required to guide the defendant through trial, and "[a] pro se defendant

must generally accept any unsolicited help or hindrance from the judge who chooses to

call and question witnesses . . ."  *Prewitt*, 2013 WL 3491078, at *6 (citing *McKaskle v.*

*Wiggins*, 465 U.S. 168, 177 n.7 (1984)).   "The critical inquiry is whether a pro se

defendant 'had a fair chance to present the case in his own way.'"  *Id.* (quoting *Holt v.*

*State*, 772 N.W.2d 470, 479 (Minn. 2009) quoting *McKaskle*, 465 U.S. at 177).   The

Minnesota Court of Appeals found that Prewitt had already announced his intent to

present a consent defense when the trial court advised him of the availability of the

defense, and the trial court also accurately advised Prewitt that challenging DNA

evidence would be irrelevant if the defense was consent.   *Id.*  The Minnesota Court of

Appeals held that the trial court did not exhibit partiality by advising Prewitt of the

possible defenses and the relevance of evidence to the defenses.   *Id.*

Next, the Minnesota Court of Appeals held that the trial court did not depart from

its constitutionally required neutrality by threatening to hold Prewitt in contempt when

Prewitt responded to the court with apparent disrespect in front of the jury, because

"[t]he right of self-representation is not a license to abuse the dignity of the courtroom."

*Id.* at *7 (quoting *Faretta*, 422 U.S. at 834, n. 46).   The trial judge also urged jurors to be

understanding of Prewitt in his "unique position" of representing himself. *Id.* Recognizing the trial judge's duty to maintain order in the court, the Minnesota Court of Appeals found no evidence of unconstitutional bias. *Id.*

The Minnesota Court of Appeals, however, agreed with Prewitt that the trial judge should not have questioned a witness. *Id.* The trial court had questioned the nurse who performed the sexual assault examination about the labeling of swabs taken from the victim, thus closing "a loose end that the prosecutor's questioning had left open, effectively helping a witness for the state to clarify her testimony. . ." *Id.* Without the court's questioning, Prewitt might have challenged the witnesses's testimony in cross-examination or closing argument. *Id.*

The court noted that Minnesota Rule of Evidence 614(b) allows a trial judge to question witnesses, but the judge must avoid asking about vital issues and must avoid giving the jury the impression that one side should prevail. *Id.* (citing *State v. Sandquist*, 178 N.W.2d 883, 884 (Minn. 1920) and *I.J. Bartlett Co. v. Ness*, 195 N.W.2d 39, 41 (Minn.1923)). The Minnesota Court of Appeals stated:

> The caselaw previously cited demonstrates that the court crossed a line, at least slightly here, by seeming to assist the state. This is not the role of a neutral court. But we do not decide whether this slight assistance constitutes plain error. This is because it is clear that any error did not affect Prewitt's substantial rights. The DNA evidence against Prewitt was overwhelming, destroying any plausible defense that he did not have sex with A.E. And the state pointed out that Prewitt had materially changed his story, first asserting to police that he had never had sex with A.E. at any time, and then asserting to the jury that he had sex with A.E. but only on her consent. The overwhelming nature of the evidence supporting conviction renders implausible the notion that the district's court's questioning on a DNA detail prejudiced Prewitt's substantial rights. Reversal therefore is not warranted.

*Id.*

Defendants in civil and criminal cases have a due process right to an impartial and disinterested tribunal. *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980). The purpose of the "neutrality requirement" is to prevent unjustified or mistaken deprivation of life, liberty and property and to promote participation by affected individuals in the decision-making process. *Id.* "The Due Process Clause of the Fourteenth Amendment "establishes a constitutional floor, not a uniform standard" regarding judicial impartiality. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997.) The Due Process Clause requires:

> "a fair trial in a fair tribunal," *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), before a judge with no actual bias against the defendant or interest in the outcome of his particular case. *See, e.g. Aetna* [*Life Ins. Co. v. Lavoie*, 475 U.S. 813,] 821-22, 106 S.Ct. at 1585-86 [1986]; *Tumey* [*v. State of Ohio*, 273 U.S. 510,] 523 [1927], 47 S.Ct. at 441.

*Id.* at 904-05. In determining whether such right was violated, there is a presumption that the decision-maker is honest and impartial. *Withrow*, 421 U.S. at 47. Establishing violation of the Due Process Clause does not require proof of actual bias, the inquiry is objective. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S 868, 883 (2009). The question is whether "under a realistic appraisal of psychological tendencies and human weakness," the alleged bias or interest in the outcome of the proceeding "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id.* at 883-84 (quoting *Withrow*, 421 U.S. at 47).

First, under the relevant Supreme Court precedent, the Minnesota Court of Appeals reasonably found the trial court's advisory as to the availability of a consent

defense and the threat to hold Prewitt in contempt were neutral in the context of guiding Prewitt through his pro se representation at trial, and did not violate Prewitt's due process right to an impartial tribunal.

Second, the Minnesota Court of Appeals did not find error of a federal constitutional magnitude in the trial court's questioning of a witness. By acknowledging that judges are not precluded from asking questions of witnesses, only that they must be careful in doing so, the court did not find that the practice of questioning witnesses posed such a risk of actual bias that the practice must be forbidden to guarantee due process. The court did not find actual bias by the trial court so as to deprive Prewitt of a fair trial, but instead found that the trial court "slightly" "crossed a line" "by seeming to assist the state." The analysis by the court of the overwhelming evidence against Prewitt indicates that the slight error by the trial judge did not lead to the type of unjustified or mistaken deprivation of liberty that is protected by the due process right to an impartial or disinterested tribunal.

The Supreme Court has stated that a pro se defendant must generally accept "unsolicited help or hindrance from the judge who chooses to call and question witnesses. . ." *McKaskle*, 465 U.S. at 177 n.7. Thus, the Minnesota Court of Appeals did not unreasonably apply U.S. Supreme Court precedent in its analysis of Prewitt's claim of impartiality.

### H.     Ground Four (multiple parts)

Respondent asserts that Prewitt's multiple-part fourth ground for relief "is a list of legal conclusions lacking sufficient facts to provide a basis for relief." (State's Mem. at 26.) Respondent further argues that the claims are procedurally defaulted because

Prewitt did not present to the state courts the factual and legal bases of any federal claims. (*Id.*) Alternatively, Respondent asserts the claims are meritless. (*Id.*)

Upon review of Prewitt's Pro Se Supplemental Brief to the Minnesota Court of Appeals, this Court finds Prewitt did not fairly present the federal nature of his multiple claims in Ground Four of the petition, with the exception of his Confrontation Clause claim, which will be addressed separately. (Appellant's Pro Se Supplemental Brief, Resp't App. at 44-65). Prewitt did not cite a specific federal constitutional right, a particular provision of the United States Constitution, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. *See, White v. Dingle*, 267 Fed.Appx. 489, 492 (8th Cir. 2008) (per curiam) (nonspecific and general references to due process, without citation to any relevant federal constitutional cases, do not meet the fair presentation standard). Therefore, he did not exhaust the alleged federal claims [Grounds Four (a), (b), (d), (e), (f) and (g)] in the state courts.

Because Prewitt could have presented these claims by labeling them as "federal" on direct appeal, state law would now preclude him from bringing the claims in state court. *See*, *Murphy*, 652 F.3d at 849 (claims that are known but not raised on direct appeal are barred from any subsequent petitions for post-conviction relief); and *McCall v. Benson*, 114 F.3d at 757 (similarity between state law claims and federal habeas claims does not satisfy the fair presentation requirement). Absent an exception to the *Knaffla* rule or an exception to procedural default, these claims are defaulted, and this Court will not address the merits.

Prewitt has not raised a *Knaffla* exception, and this Court finds no basis in the present record suggesting such an exception exists for the unexhausted claims.

Furthermore, Prewitt has not shown cause for the default, and likely could not offer a valid reason why he did not present the state court with any argument or legal authority concerning his federal claims.  Where the petitioner has not shown cause to overcome procedural default, the habeas court need not address the prejudice prong.  *Leggins v. Lockhart*, 822 F.2d 764, 768 (8th Cir. 1987).  Finally, Prewitt has not offered any new evidence of his innocence and has not established actual innocence to overcome procedural default.  *See, Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim . . . unless the petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial . . .")  Thus, Prewitt's claims in Ground Four (a) (b), (d), (e), (f) and (g) are procedurally defaulted and should be dismissed.

Prewitt, however, fairly presented the federal nature of his Confrontation Clause claim to the state courts by citing the Sixth Amendment and the federal constitutional case of *Crawford v. Washington*, 541 U.S. 36 (2004).  (Resp't App. at 56-58.)  Prewitt alleged the trial court violated the Confrontation Clause by allowing the victim to testify that her friend Makosa had told her that Prewitt tried to get into the bedroom where she was sleeping on the night of the rape.  (*Id.* at 56-57.)[4]  Makosa was on the witness list, but she was not called to testify.  (*Id.* at 57).  The Minnesota Court of Appeals addressed this claim together with all of Prewitt's claims in his Pro Se Supplemental

_____

[4] The Minnesota Court of Appeals found, "A.E. felt pain in her genital area and her friend told her that Prewitt had gone into the bedroom after her and had refused to let anyone else inside."  *Prewitt*, 2013 WL 3491078, at *1.

Brief by stating, "Prewitt raises a host of additional evidentiary issues and repeats his claims of bias and corruption in a supplemental pro se brief.  We have carefully considered all his contentions, and we conclude that none of them warrants detailed discussion or supports reversal."  *Prewitt*, 2013 WL 3491078, at *8.

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Harrington*, 131 S.Ct. at 784 (citations omitted).  When a state court does not provide an explanation for its decision of a claim, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.*

The Supreme Court in *Crawford* held that "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination" violate the Confrontation Clause of the Sixth Amendment.  *Crawford*, 541 U.S. at 53-54.  The key issue is whether the statements at issue are testimonial.  *Id.* at 61-64.  The Court did not "spell out a comprehensive definition of 'testimonial' but stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.'"  *Id.* at 68.  In *Crawford* the hearsay statements were testimonial because they were made by a witness, also a potential suspect in the case, while in police custody.  *Id.* at 65.

Unlike the hearsay statements in *Crawford*, the Minnesota Court of Appeals could reasonably have found that the out of court statements admitted in Prewitt's trial were not testimonial, therefore not protected by the Confrontation Clause, because the

statements were made by the victim's friend to the victim on the morning after the alleged rape, before any police investigation was started. *Prewitt*, 2013 WL 3491078, at *1. This is not similar to any of the examples of testimonial statements, primarily judicial proceedings and police interrogations, described by the Supreme Court in *Crawford*. For this reason, Prewitt has not met his burden to show there was no reasonable basis for the state court to deny relief on his Confrontation Clause claim. Therefore, Ground Four (c) of the petition should be denied.

## I.   Certificate of Appealability

If the District Court adopts this Report and Recommendation, Prewitt must seek a Certificate of Appealability ("COA"), if he wishes to appeal to the Eighth Circuit Court of Appeals. Fed. R. App. P. 22(b). Federal district courts cannot grant a COA unless the habeas petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Armstrong v. Hobbs*, 664 F.3d 1137, 1143 (8th Cir. 2011). "Good faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253." *Kramer v. Kemna*, 21 F.3d 305, 307 (8th Cir. 1994). To make a substantial showing of the denial of a constitutional right, the inmate must show that the issues to be raised on appeal are debatable among reasonable jurists or that a different court could resolve the issues differently, or that the issues otherwise deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)).

The issues here do not present a close case that is debatable among reasonable jurists. Furthermore, the issues are unlikely, given the very deferential habeas standard of review, to be resolved differently by another court. This Court therefore recommends

that if the District Court adopts this Report and Recommendation, a COA should not issue.

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Prewitt's request for discovery be **DENIED**;

2.  Prewitt's application for habeas relief under 28 U.S.C. § 2254 (Docket No. 1) be        **DISMISSED with prejudice**;

3.  If this Report and Recommendation is adopted, a COA should not issue, and judgment should be entered accordingly.

DATED:  February 19, 2014                      s/Leo I. Brisbois
                                               Leo I. Brisbois
                                               United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 5, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection.  A party may respond to the objections within **fourteen (14) days** of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.